case number 22-5696 Krishna Patel et al. versus Terrell Hughes Jr. et al. Oral argument 15 minutes per side. Mr. Thomas for the appellants. May it please the court. Good afternoon. My name is George Thomas and I'm before you as counsel for appellants Krishna Patel, Vijay Patel, and Ace Tax Solutions Incorporated. Um, this case comes before this court admittedly with a muddy procedural history, albeit a history that highlights, I think, appellants attempt to have a court hear the merits of their case. They, appellants brought suit in the middle district of Tennessee in July of 2013, July 16th, specifically, and claimed various claims, including copyright infringement after several extensions to reply motions to dismiss being filed. Ultimately, the district court on December 16th, 2014, the same day it granted the last extension, entered an order administratively closing the case due to the pending bankruptcy for defendants. And I think that's an important term for the adjudication of this case that on page ID 616, the case was administratively closed due to the pending bankruptcy for defendants. In December, um, 2000, one, one, uh, one question that I think, um, it would help your side to be able to help us with some cases on this point is, um, you know, it's an abusive discretion standard. I mean, the actual, the language of the rule is, you know, failure to prosecute. So pretty general standard, which would explain why the district court judge would have a kind of abusive discretion review over any decisions. Are there, are there cases where we found abusive discretion where the delay was six years or more? Not with the, I think this is a case where the court hasn't seen a pro se litigant try to litigate and prosecute their case. Um, but the, but the parties had counsel initially, right. I mean, it wasn't like six until six months after, um, that, that, that, that counsel withdrew. So it wasn't as if they were pro se the whole time going back 10 years. Right. I mean, if we go back to 2013, didn't they have counsel at various points? They did your honor. Thank you for the question. They did. Um, they had counsel to begin the proceedings and it was in, I believe, May of 2015 when counsel moved to withdraw and the court said no, because the case hasn't been reopened. And for that time, although it's not, um, I think an issue that's proper on direct appeal, the ancillary proceedings and other courts, given that they were pro se, I believe, and the appellants believe highlight that they didn't really have counsel. Once counsel filed that motion to withdraw, although it was denied and he was still counsel of record, their pro se proceedings and their litigation show unto the courts that they really were acting alone through all of this. And the appellants position is that given their status as pro se litigants for all intents and purposes, they should be granted some sort of leniency in terms of bringing the prosecution. Which way does leniency cut? Are you saying that excuses the six years or you're saying that excuses their intentional decision to prosecute the case elsewhere? Well, first, I believe that leniency should apply to their decision to prosecute the case elsewhere. And appellants stand for the proposition that the bankruptcy code, you know, chapter 11, section 108 states that there are 30 days to commence or continue a civil action against a debtor. And that was reaffirmed in Cox versus specialty vehicle solutions. Given the court's language, although admittedly the court does say when the parties are ready, the court administratively closed the case due to the pending bankruptcy for defendants. So let me jump in here for a second, because I'm still stuck on the idea of leniency with respect to them not being represented. Many district courts have local rules that say that you're represented until unless or until you get an order from the court, allowing counsel to withdraw. Is that the case in the Middle District of Tennessee? Because clearly here you've got an order saying no, you can't withdraw. Yes, that, thank you, Judge. That is the rule in the Middle District of Tennessee. And I'm not standing for the proposition that technically they were represented by counsel. In effective assistance of counsel, those sort of arguments aren't proper vehicles and arguments on direct appeal as it may foreclose any collateral attack. I raised the issue simply to preserve the record and to show the court that perhaps they were not represented by counsel during those ancillary proceedings and did not have direct contact to counsel or any of those matters. I was just going to ask about the third factor, which is prior notice. So do you think the district court abused its discretion here when it analyzed that prior notice factor? I do. I believe that the district court abused its discretion largely first by not applying and giving leniency to the underlying rule of section 108 in the bankruptcy code providing 30 days. But your clients even missed that deadline, right? Even if we thought the 30-day safe harbor applied, you're well outside of that on both, right? With respect to both defendants. Correct, Judge. Thank you. We are outside the 30 days. However, we're certainly not six years. And if the court is going to use their discretion with the hopes of adjudicating claims on their merits, then applying the six-year rule of thumb or line of facts would be, in our opinion, an abuse of discretion, given that the case was administratively closed pending a bankruptcy. The bankruptcy to the corporate debtor and the corporate defendant did not close until around 60 days before the case was reopened. I get nervous sometimes when we add glosses to rules. I mean, the rule is failure to prosecute, and it's understandable that judges would write opinions, and we create four-part tests, and then the four-part test has a word, and then that develops. It's like the game of telephone. They get farther and farther away from the original point. But what's your take on the word willfulness? I mean, the thing I'm struggling a little with in this case is I would have thought in the context of words like failure to prosecute, the willfulness component is about voluntariness versus involuntariness. Like you're being held in Russia for six years. You can't prosecute a case in America, right? That makes sense. You're in a coma. You can't prosecute a case. But if you're willfully, voluntarily prosecuting a case somewhere else, isn't that by definition willfulness? It's not bad intent. It's not like someone's a bad actor. That's not the point. It's not like a criminal case. It's just with these voluntary or involuntary actions. You're free to push back on that on all kinds of grounds. I feel like it should work. And I'm not saying our cases all say that, but tell me how it should work. In this case, it should work in that it's a willfulness to not prosecute the case in the Middle District of Tennessee. They could not prosecute the case in the Middle District 30 days after the bankruptcy against the corporate defendant had closed. They did willfully prosecute other cases as pro se litigants, largely given because they didn't know when and if they were allowed to re-enter the Middle District. So I take it the stay didn't apply to the Georgia litigation. That's the stay to the appellants. It certainly did not. They moved forward given that there was no Georgia in the Georgia action. No court told them they couldn't move forward. Well, isn't it accurate that they had been freed from the stay, even with respect to the Middle District of Tennessee action, pretty early on? No. The stay was lifted very early on in the proceedings as to Mr. Hughes individually. The bankruptcy case was not dissolved until I think it was December or November of 2020, and in which case? But the bankruptcy stay, which would have prevented the litigation, was lifted, correct? I mean, the bankruptcy court lifted the stay, so that this case could be litigated. Yes, Judge. Admittedly, appellants understand this is an uphill battle, and we do move to notions of equity and fairness in that this plaintiff and these appellants repeatedly, whether it was pro se or through certain pleadings that maybe didn't apprise the court, to say that they willfully abandoned their claims and just went off into the wind, I believe, is a miscategorization of the facts and the nature of the proceeding. We've already alluded to this question about whether they were represented or not, but before they went off and filed in Georgia, did they try to contact the lawyer who already represented them in the Tennessee case to say, hey, can we go file an action in Georgia? Thank you, Judge. I'm not sure. If I gave an answer one way or the other, it would be disingenuous to the court, and I certainly do not want to portray a fact that I don't know personally or that I haven't been told by my client that I can represent. Mr. Thomas, that's always wise. Why don't we hear from Mr. Hiller, and you'll get your full rebuttal. I think that probably works out well. Mr. Hiller, if you're prepared to go, if you're willing to pick up on the conversation, that would be great. Sure. Thank you, Your Honors, and may it please the court. My name is Adam Hiller, appearing today on behalf of the respondents, Mr. Hughes and T. Rex Hultins. To jump right in, Your Honors, the operative analysis here is the abuse of discretion under Rule 41. The lower court made it clear that the basis for the dismissal was a failure to prosecute. What does the word willfulness mean in our case? How do we think about that? Is that like a state of mind of not behaving with good intent or kind of a negligence-type thing or even worse, intentional misconduct, or is it voluntariness? I'm really struggling with what this test means. I think the Sixth Circuit has made it clear that willfulness is considered through the actions of the parties, whether it's a purposeful meanfulness to thwart the judicial system or a reckless disregard for that person's conduct to the proceedings, in this case, in the Middle District. What we have here, Your Honors, is the decision whether plaintiffs decided to proceed pro se or not. That was their own decision, but they decided to file a separate lawsuit arising out of the same facts and circumstances. Just out of curiosity, you seem to be acknowledging it has this state of mind component to it, you know, a weird mens rea. I'm just trying to make sure I'm getting your position. The statute refers to failure to prosecute. Are you saying that someone who's just utterly naive and just lets it go for 10 years but has zero ill intent, nothing reckless, nothing else, but they're just whatever? Maybe it's an issue with their state of mind. Maybe it's an issue of not having a lawyer. Maybe it's an issue of not understanding how the process works, but it's an utterly innocent 10-year delay. That can't be dismissed for failure to prosecute? It can't be dismissed for failure to prosecute. Then why are you saying there's a state of mind? I mean, reckless disregard, where does that come from? Well, I think it comes from the actions of the parties, Your Honor. When you consider that the parties in this case had an opportunity to reopen the pending lawsuit in the Middle District, which, as Your Honor has pointed out, could have proceeded. The stays were lifted. This notion that it couldn't proceed due to the bankruptcy is really a misnomer. There are agreed orders in both bankruptcy actions signed by counsel for the plaintiffs agreeing to lift the stay and allow the copyright case to go forward. In fact, in plaintiff's own amended complaint in the Middle District, I believe it's Allegation 13, they recognize the fact that the only reason this case is proceeding is because of those agreed orders in both bankruptcy courts allowing the case to proceed. To Your Honor's points, the plaintiffs were represented by counsel for a vast majority of this case. This notion that pro se litigants should be afforded leniency, we recognize that, but there has to be a stopping point at that point because of the parties like the defendants here. The conduct of the parties, the plaintiffs specifically, is well documented. The Georgia court in their January 2021 order was very clear as to what they thought about plaintiff's conduct. They said specifically it bordered on vexatious and abusive litigation. The court even said if such conduct continues, which in that action was for post for reconsideration and to alter the judgment. The court was considering Rule 11 sanctions. Additionally, the court told the defendants in the Georgia action ignore any more filings by the plaintiffs because it's a waste of the court's time and the defendant's time. So once the plaintiffs got that type of order from the Georgia court, they turned around and said let's start the Middle District case again. So this choice that they've made to effectively pick and choose what cases and courts they're going to pursue their claims in, that's a deliberate decision on their part, whether they're represented by counsel or not. And this court's case law is clear that when there is a clear record of delay, which is what we have here, to the tune of over six years, that factor in and of itself provides the District Court the ability to dismiss or further prosecute. Well, when you talk about the conduct from the Georgia action and particularly the dismissals that were had there and the denials of the motions that they filed, is that something that we should take into consideration here when it appeared that what the Georgia court was saying was that, look, your pro se pleadings are something that we can't really even discern what you're saying here. They don't make a whole lot of sense. And so they were really knocking the parties or the plaintiffs in those actions for the filings. Why should that count against them in the Middle Their pleadings were filed by counsel. And in fact, they had already survived dismissal on at least two of the claims that they were making. I guess I'm not seeing how that lines up. Yes. The reference to the Georgia court action is simply proof of the behaviors and the conduct of the plaintiffs in line with the four part test under Noel for failure to prosecute going to the deliberate decision to litigate elsewhere. That again, the plaintiffs had no reason to go to the Georgia action. They could have made a motion in the middle district in response to the court's order, which specifically states your honor, when the parties are ready, they can make a motion to reopen the case. That did not happen for years. And your point is simply that they shouldn't have gone to Georgia, not all of the discussion about the substance of or how their motions were treated down there. Correct. My point is the decision to affirmatively take the action to Georgia. And that is evidence of their decision not to prosecute the case in the middle district when they could have. And this court asked Mr. Thomas about case law about this particular instance. And I think Mr. Thomas articulated that, um, there were none involving pro se litigants, but I would refer the case, um, this court's decision in bar corrugated, which actually involves a pro se litigant and actually involves a time period while not exactly the same as here, but a number of years. Um, in that case, your honors, the plaintiffs filed a petition in the resolve the case. And the plaintiff waited, I believe, nine years between its petition to enforce the judgment, uh, and then a motion to the court to basically get back involved again, pro se litigant involved. And the court basically said, we're dismissing this for failure to prosecute because we didn't hear from you guys for nine years. And that's effectively what we have here. The district court did not hear from the plaintiffs for over six years. And in that time, the plaintiffs were pursuing claims in the Georgia action, as well as filing adversarial complaints in both bankruptcy proceedings. Does it matter that they went to Georgia? Would you be here saying that they had failed to prosecute if they had just gone away for six years, not gone to Georgia and then just came back and said, Hey, I'd like to start again. Yes, your honor, because that would still suggest a, a willfulness and not prosecuting that claim in the middle district. So they just made his voice not to, and that would be enough. Yes. And I think, I think the, the affirmative decision, knowing they had claims to litigate, taking those claims elsewhere is just evidence within that analysis of willfulness, which is the first prong of the knoll test. Can I ask you another question? Um, how were you to waste time, money and effort? Um, how did you waste time, money and effort here? Well, uh, your honors, my clients have now been involved in this particular case, which will generally describe as a rising out of the copyright infringement claims, nearly 10 years. Um, that is involved dealing with multiple lawyers. I had predecessor counsel involved before my firm was involved. They were the ones that were motion to dismiss that took time, effort and resources. And then subsequently my firm's involvement. So, um, and plus the fact that I believe the court knoll stated that, um, if there is a fair record of delay, um, that in and of itself is grounds for a district court to dismiss, not, not one single factor is disposed. And with respect to the factors, your honor, the last one, um, that I was articulated in knoll is whether or not there's a lesser sanction considered. Uh, and I think the court again, going back to the bay corrugated case, uh, laid out a very good reason as to why that decision in and of itself is not dispositive. In this case, lesser sanction. Um, I believe Mr thomas would without prejudice. Um, if that came to be, well then there would be no penalty for what has transpired in the last six years and it would just allow the plaintiffs to start over and again, ignore what's transpired, which is, as I've articulated a decision to avoid prosecuting their claims in the middle district and to seek relief elsewhere. George action, both pending bankruptcy courts. Is there anything about the nature of this dispute that suggests that this, I guess it's not almost 10 year delay, but if you want to call it six year delay, um, means that evidence will disappear. I mean, I guess I'm not sure why that would happen in a copyright case. Is there any real risk to either side? Um, on that point, honestly, there is, um, this, this is, as Mr thomas indicated right off the bat, this is a complicated case. You have parties with knowledge, hope to still have knowledge both in the United States as well as India. There is a software company in India involved and I know that there are a whole host of actors in India, whether or not those people are still locatable, available as I think, I think the court articulated this in no or another prior case. But the mere passage of time in and of itself is prejudicial. I think we can all agree that when months lead to years and then multiple years, our abilities to recall certain details and information or where certain documents are just simply face that. That's a reality that I think we can all appreciate. So when we are approaching years since the operative documents and the operative discussions between the parties, the defendants, as it continues, are continued to be prejudiced in that regard. And I think that the most critical issue here, your honors, is again, um, the reasoning for, for what plaintiffs decided to do again, which was not litigating the middle district that would by the plaintiffs. The argument is because of the automatic status in the bankruptcies, that simply is not true. As, as your honors pointed out earlier, first, there are agreed orders in both bankruptcy actions, allowing the case to proceed. So there was nothing preventing the case proceeding. And even arguably, if there was, there was no effort on the plaintiff side, even when they still had counsel to make a motion to proceed. And again, in their amended complaint, despite what they argue in their briefs, the plaintiffs acknowledge that this case can proceed because of the agreed orders in both bankruptcy actions. So that, that argument that that was their reason to look elsewhere is simply without merit. Should we care about the fact that at least when, when the first was at the Patterson firm moved to withdraw from the case, they attached a letter to the plaintiffs that specifically said that the civil case has been administratively closed, pending resolution of the bankruptcy court action. So at least with respect to the hotels, should we, how should we treat that information? That apparently the information that they were pending resolution of the bankruptcy? Yes, your honor. Well, certainly at that point, the hotels had the option to pertain separate counsel, to advise them what actually that means and to more likely than not remind them of the two agreed orders that lifted the stage to allow the case to proceed. So then their lawyers, if assuming that that was mistaken, that was just a bad against, um, the parties. Well, yes. In that, if, if there was uncertainty as to how their rights were being affected, then they had, they, they should have sought out separate counsel. The other issue your honors is that the Patels were involved in both bankruptcy actions. They fired, they filed adversary complaints in both. And to your honor's point earlier, even if we, we are a slave to the words in the middle district order that due to the pending bankruptcy, this has been closed. Well, the plaintiff still missed the 30 day window that's afforded under the bankruptcy code to recommence a civil action. I believe Mr. Hughes is bankruptcy estate was wrapped up in 2014 and the TRX holdings bankruptcy matter was wrapped up in November of 2020. So even if we afford deference to the plaintiffs as to why nothing was done, the 30 day window on the bankruptcy coach had still run. Well, let me ask you about that. What would, um, let's assume all of that applies. Uh, would it have been proper for the district court to just dismiss their case because just because they missed the 30 day deadline or is there some additional requiring requirement of willfulness or bad faith or something like that? Yes, your honor. I see my time is run. May I answer your question and wrap up? Yep. So again, under Noel, your honor, it is not simply the, um, 30 day window as you articulated. It is an enumerated factored analysis. And I think when you take all factors into consideration, the decision to go and proceed in Georgia as well as multiple other cases, the prejudice to the defendants and the clear fact based upon the plaintiffs detailed and evidence behavior, no lesser sanction would have been available to preserve the integrity of justice in this case. Thank you, Mr. Hiller. Mr. Thomas, you have your rebuttal. Yes, your honor. Thank you. First, um, just like to point out in the Bay case cited by opposing counsel, um, in his brief and an argument today that, yes, it took nine years. Yes, those litigants were pro se. However, again, the difference here in the Bay case is that the, if we take a holistic view of what the Patels did in the lower proceedings, whether that's the bankruptcy court, the Georgia action, they, they moved, they attempted to seek justice. This wasn't a go radio silent for nine years, um, situation. And I do think that given the bankruptcy proceeding, the Georgia action, there's, it, it would be surprising to me if defendants during that time did not have prep, we're not preparing for litigation and their prejudice of the long wait period is somewhat mitigated because they had been preparing for litigation. And even though the Georgia courts thought they were behaving vexatiously, I mean, the more you're going to talk about Georgia, the more you've got to account for how the judge reacted to their litigation conduct. Yes, judge. I'd certainly acknowledge that. I do think that to the panel's earlier point, the comments from the Georgia action came from the, um, amateurism of the pleadings rather than the substance of a case of the case. And for many years, that's simply what the Patels and ace tech solutions we're trying to do, which was get an award for the copyright infringement that took place. And, um, I do believe that the 30 day, um, stay, I do believe that council statements regarding you have to wait until the end of the bankruptcy litigation and sent a letter to them. This, this, this last point about that, that's in the record. And that point was raised to the judge Richardson. I think it was, Oh, I apologize. Your honor. I'm I don't understand your question. This last point about the lawyer told them they couldn't do something. I think it's a text or email was this argument in this evidence put in front of the district court judge in the middle district of Tennessee in dealing with the rule 41 decision. Uh, your honor, I do not believe that that argument was deployed. Um, wouldn't, wouldn't you say that, uh, absent and you know, a real injustice that that is a strange argument for showing the district court abused its discretion. How do you abuse your discretion by not accounting for an argument? Made your honor. You're obviously correct. And I would say that there is a, an injustice here, if not given the chance to argue the merits. And with that, um, unless the panel has any further questions, appellant would rest their case. Okay. Thank you very much, Mr. Thomas, Mr. Hiller. We, um, I guess we're accommodating a scheduling conflict. I can't remember exactly who, but I I'm glad this worked out. Uh, thank you very much for your helpful briefs and as always for answering our questions, which we're always truly grateful for. So thank you so much. The case will be submitted and it's in its own way can adjourn court. Uh, thank you. Your honor. This honorable court is now adjourned council. You can disconnect.